ROSE *v.* SOUTHERN MICHIGAN NATIONAL BANK
OF COLDWATER, MICHIGAN.

1. Wills—Mutual Wills—Nudum Pactum.

Agreement between brother and 2 sisters whereby latter agreed
to will property which either of them might receive from
estate of their father to the brother, or in the event of his
death prior to the death of either sister, to the brother's
wife was a *nudum pactum* where the brother did not under-
take to do anything and the consideration he paid was re-
turned to him, especially where he died before either of
his sisters and was survived by his wife who received his
his entire estate under his will.

2. Same—Revocation of Mutual Wills.

Two of three parties to an agreement to leave each other
property by their will were at liberty, with their mutual
consent to revoke or change their wills, where the agreement
was a *nudum pactum* as to the third party.

3. Same—Mutual Reciprocal Wills—Abrogation of Contract—
Parol.

A contract to make mutual reciprocal wills not expressly re-
quiring written consent to revocation of either of the wills
executed may be abrogated or modified by parol, if the
parties thereto so agree.

Appeal from Branch; Jacobs (Theo T.), J. Sub-
mitted June 8, 1950. (Docket No. 39, Calendar No.
44,705.) Decided October 2, 1950. Rehearing de-
nied December 5, 1950.

Bill by Charlotte D. Rose against the Southern
Michigan National Bank of Coldwater, Michigan, in-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 57 Am Jur, Wills, § 699.
[1, 2] Joint, mutual, and reciprocal wills (contract for wills). 169
ALR 9, 28.
[2, 3] 57 Am Jur, Wills, § 706.

dividually and as executrix and trustee under will of Edith L. Rose, deceased, and others to enforce an agreement to make mutual wills. Decree for defendants. Plaintiff appeals. Affirmed.

*Curtis & Curtis, William H. Frankhauser* and *Vent & Vent,* for plaintiff.

*Raymond H. Dresser, Arthur G. Lyon, Wedge & Andrews, Bodman, Longley, Bogle, Armstrong & Dahling* (*Louis F. Dahling,* of counsel), for defendants.

REID, J. Plaintiff filed her bill to enforce an agreement to make mutual wills in which wills plaintiff was to be a contingent beneficiary. From a decree dismissing the bill, plaintiff appeals.

Lester E. Rose, a banker at Coldwater, died in 1929, leaving an estate then worth about $525,000. He was survived by his 3 children, Stephen, Bertha and Edith Rose. Plaintiff is Stephen's widow.

Bertha and Edith never married. Under his will, Lester E. Rose left most of his estate in trust; Stephen, Bertha and Edith were each to receive the income from one-third thereof during their respective lives. If Stephen were to die first, that one-third share from which he had received the income was to be distributed equally to Bertha and Edith. If either Bertha or Edith died first, such deceased's share, or if both predeceased Stephen, their shares, of the corpus were to be added to Stephen's share, from all of which Stephen was still to receive only the income. If either sister were the last survivor, she would also receive the corpus of her sister's share, but that one-third portion of the corpus from which she had received income would at her death go to the collateral heirs. If Stephen were the last survivor, upon his death the entire corpus of the estate would go to the

collateral heirs. Thus, under this will, Stephen could never receive any part of the corpus under any circumstances.

Bertha, Stephen and Edith were dissatisfied with the terms of their father's will. They objected to its admission to probate, claiming lack of testamentary capacity. The will was admitted to probate and, on appeal to the circuit court for the county of Branch, its admission was affirmed on March 27, 1930. Fifteen days later, on April 11, 1930, the 3 children entered into an agreement, plaintiff's exhibit No 1, under which Edith and Bertha agreed with Stephen that they, Edith and Bertha, would, by will, leave to Stephen or his wife, this plaintiff, if she survived him, all of the corpus which they, or either of them, might at any time receive from their father's estate, whether by will or otherwise. Under the terms of Lester E. Rose's will, the subject matter of this agreement could, therefore, at best, be two-thirds of the corpus of their father's estate.

The 3 children appealed to the Supreme Court from the decision of the circuit court of Branch county affirming the admission of Lester E. Rose's will to probate. Pending this appeal, the direct heirs (the 3 children) and the collateral heirs attempted to agree under the Dodge act (CL 1948, § 702.45 [Stat Ann 1943 Rev § 27.3178 (115)]) as to the division of Lester E. Rose's estate. This agreement was approved by the circuit court and, on appeal by the Southern Michigan National Bank as fiduciary, was held invalid. *Rose* v. *Southern Michigan National Bank,* 255 Mich 275.

On April 18, 1932, Stephen, Bertha and Edith together entered the offices of the Southern Michigan National Bank at Coldwater, Michigan. They then executed their respective wills, which are set forth in the record. Each executed his or her will in the presence of the others and before the same subscrib-

ing witnesses. These wills were drawn by the same scrivener. Each sister disposed of her estate to the other sister and Stephen equally, if both were living at her death. If either sister predeceased Stephen, Stephen would receive the entire estate of such predeceasing sister. If Stephen predeceased either or both of his sisters, his wife (plaintiff) would receive the share under the sisters' will that Stephen would have received had he been living.

On January 1, 1939, almost 7 years after the execution of these wills, Stephen Rose died, leaving an estate of approximately $14,000 and his will, executed as above noted on April 18, 1932, was admitted to probate.

On November 30, 1944, Edith and Bertha Rose executed new wills with no provision for Stephen's widow, this plaintiff.

Edith Rose died in 1945 and her will of 1944 was admitted to probate and her estate completely probated without claim or contest by plaintiff. Bertha died in August, 1947, and shortly thereafter, plaintiff instituted this suit for specific performance of the agreement which plaintiff claims underlay the 1932 wills.

Plaintiff relies on the agreement, plaintiff's exhibit No 1, which is as follows:

"Agreement Made this 11th day of April, 1930, between Stephen C. Rose, party of the first part, Bertha Rose, party of the second part, and Edith L. Rose, party of the third part.

"In consideration of the sum of $1 and other valuable consideration paid by each of the parties hereto to the others, parties of the second and third parts each agree and each pledge herself to party of the first part, that they, and each of them, will leave by will to party of the first part, or, in the event of his death prior to the death of parties of the second and third part, or either of them, to Charlotte D. Rose,

wife of party of the first part, all of the property whatsoever nature or the equivalent in value thereof (except income) which they, or either of them at any time receive from the estate of their late father, Lester E. Rose, whether by virtue of his will or otherwise.

"IN WITNESS WHEREOF the parties hereto have executed this Agreement the day and year first above written.

STEPHEN C. ROSE    (L.S.)
BERTHA ROSE        (L.S.)
EDITH L. ROSE      (L.S.)

In Presence of:
RAE E. HERMAN,
JOHN R. THOMPSON."

Stephen by this agreement did not undertake to do anything. He received back the dollar he paid as a consideration. As to Stephen and also as to plaintiff and all persons other than the 2 sisters themselves, the agreement was a *nudum pactum.* Stephen later (in 1932) made a will by which he left his estate to his wife (plaintiff herein) if she survived him, but if not, to the 2 sisters or survivor of them. His wife's survival of him left his sisters both without any interest in his estate. Other contingencies mentioned in his will are not important to our present consideration. No equity arose in favor of Stephen's widow because of Stephen's signature to the agreement, plaintiff's exhibit No 1, under such circumstances, nor did the sisters receive any actual benefit by his will.

The 2 sisters were bound each at the option of the other while both lived. Edith and Bertha went together in 1944 to a scrivener to have their wills drawn and each then and there drew, signed and declared a separate will. Such action showed a common agreed-on purpose by the 2 sisters in 1944 to do away with all agreements to leave plaintiff anything.

Edith and Bertha were each at liberty to revoke, by the other's permission. The will of each sister in effect amounted to a revocation of the agreement of 1930, above recited.

It is fairly to be inferred that each sister consented to the other sister's revocation of the agreement. Under all the circumstances of this case each had the right to make the revocation.

In *Phelps* v. *Pipher,* 320 Mich 663, 664 (syllabus 11), we say as to persons agreeing to make mutual wills:

"A contract to make mutual reciprocal wills not expressly requiring written consent to revocation of either of the wills executed may be abrogated or modified by parol, if the parties thereto so agree."

The decree dismissing the bill is affirmed. Costs to defendants.

BOYLES, C. J., and NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.